Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLARISSA PROVOST,<br><br>             Plaintiff,<br><br>   v.<br><br>CONTANGO OIL & GAS COMPANY, WILKIE S. COLYER, JOHN C. GOFF, JOSEPH J. ROMANO, B.A. BERILGEN, LON McCAIN, KAREN SIMON, and JANET PASQUE,<br><br>             Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Clarissa Provost, by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

<u>**SUMMARY OF THE ACTION**</u>

1.     Plaintiff brings this stockholder action against Contango Oil & Gas Company ("Contango" or the "Company") and Contango's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants") for violations of

Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Independence Energy LLC ("Parent") through vehicles IE L Merger Sub LLC ("Merger Sub 1"), IE C Merger Sub Inc. ("Merger Sub 2"), IE OpCo LLC ("OpCo"), and IE PubCo Inc. ("New PubCo" and collectively with Parent, Merger Sub 1, Merger Sub 2, and OpCo, "Independence") to enjoin a proposed all stock transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a June 8, 2021 filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, each issued and outstanding share of common stock of the Company will be converted into the right to receive 0.2 shares of IE PubCo Inc. Class A Common Stock. As a result, shareholders of Contango will own approximately 24% and shareholders of Independence will own approximately 76% of the combined company.

3.      Thereafter, on July 26, 2021, Defendants caused a Registration Statement on Form S-4 to be filed with the SEC in support of the Proposed Transaction, which was thereafter amended on September 13, 2021 (the "Registration Statement").

4.      The Proposed Transaction is unfair and undervalued for a number of other reasons, including that the only effect that the consummation of the Proposed Transaction will have on Plaintiff's shares of Contango stock is to make them less valuable by diluting them.

5.      Additionally, the Registration Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" that did not include the creation of an independent committee of disinterested directors to oversee the process.

6.     Next, it appears as though the Board has entered the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.     In violation of the Exchange Act Defendants caused to be filed the materially deficient Registration Statement on July 26, 2021 with the SEC, thereafter amending it on September 13, 2021.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote her shares in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Contango, provided by Contango to the Company Board's financial advisor Jefferies, LLC ("Jefferies"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Jefferies and provide to the Company and the Board.

8.     Accordingly, this action seeks to enjoin the Proposed Transaction.

9.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## **PARTIES**

10.     Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Contango shareholder.

7.      Defendant Contango is a Texas corporation whose principal executive office is located at 111 E. 5th Street, Suite 300, Fort Worth, Texas 76102.  Contango's common stock is publicly traded on Nasdaq under the symbol "MCF."

8.      Defendant Wilkie S. Colyer ("Colyer") has served as director of Company at all relevant times. In addition, Colyer also serves as the Company's Chief Executive Officer ("CEO").

9.      Defendant John C. Goff ("Goff") has served as director of Company at all relevant times.

10.      Defendant Joseph J. Romano ("Romano") has served as director of Company at all relevant times.

11.      Defendant B.A. Berilgen ("Berilgen") has served as director of Company at all relevant times.

12.      Defendant Lon McCain ("McCain") has served as director of Company at all relevant times.

13.      Defendant Karen Simon ("Simon") has served as director of Company at all relevant times.

14.      Defendant Janet Pasque ("Pasque") has served as director of Company at all relevant times.

15.      The Defendants named in paragraphs 8-14 are referred to herein as "Individual Defendants" or "Director Defendants."

11.      Non-Party Parent is a diversified, well capitalized, U.S. independent energy company with a portfolio of assets in key proven basins across the lower 48 states. Independence is incorporated under the laws of Delaware and has its headquarters in Philadelphia, PA.

4

12.     Non-Parties Merger Sub 1 and Merger Sub 2 are wholly owned subsidiaries of Independence created to effectuate the Proposed Transaction.

13.     Non-Parties OpCo and New PubCo were formed by Parent to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

15.     Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Background of Contango*

17.     Contango an independent oil and natural gas company, acquires, explores, develops, exploits, and produces crude oil and natural gas properties in the shallow waters of

the Gulf of Mexico and onshore properties in Texas, Oklahoma, Louisiana, and Wyoming in the United States. As of December 31, 2020, it had proved reserves of approximately 34.2 million barrels of oil or other liquid hydrocarbons equivalent, consisting of 13.0 million barrels of oil, 84.5 billion cubic feet of natural gas, and 7.2 million barrels of natural gas liquids. The Company was founded in 1986 and is headquartered in Houston, Texas.

18.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a May 13, 2021 press release announcing its 2021 First Quarter Financial Results, the Company highlighted such milestones as Recurring Adjusted EBITDAX (a non-GAAP measure, as defined and presented herein) of $23.8 million, compared to $14.9 million in the prior year quarter, as well as the acquisition of Mid-Con Energy Partners, LP.

19.     Speaking on the positive results, Defendant CEO Colyer commented in the Press Release, "'As noted in this release, and our related SEC filings, we had a very busy first quarter of 2021 that has been transformative for the Company. We closed two acquisitions in the first quarter and expanded our credit facility to greatly enhance our financial flexibility and acquisition dry powder… We have also increased our reserves, and financial strength and financial flexibility that positions us well to continue our consolidation strategy while the window of opportunity still exists to acquire PDP-heavy assets, with associated development potential and at attractive prices. Our technical team's focus on operational efficiencies and cost reduction efforts across our asset base resulted in a 7.5 MMBoe addition to proved reserves in the form of positive performance revisions at SEC pricing. We believe that we will be equally successful in increasing the value of the reserves acquired in the Mid-Con and the Silvertip Acquisitions, and we believe this process to be repeatable on future acquisitions based on our existing track record. We believe our diversified

portfolio provides us an inventory of very high return capital projects to execute on in 2021 and beyond. Maintaining a strong financial profile is a priority for us as we look to potentially take advantage of more acquisition opportunities. We strive to maintain maximum flexibility in our capital structure for financing acquisitions, and we protect our liquidity and cash flow through our aggressive hedging program.'"

20.     Nevertheless, the Individual Defendants have caused Contango to enter into the Proposed Transaction.

***The Flawed Sales Process***

21.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

22.     Primarily, the Registration Statement gives no adequate explanation for why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than the dilution of the value of their shares.

23.     Moreover, the entirety of the Merger Consideration consists of stock of a subsidiary of Independence created solely to effectuate the Proposed Transaction. Notably, Independence, the true Parent, is not a public company. As such, Plaintiff is unable to evaluate the value of the pro-forma entity (in which she will have a significantly diluted interest), the value of the Merger Consideration, or whether to vote in favor of the Proposed Transaction.

24.     In addition, the Registration Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Independence, throughout the sales process, if any, and whether these agreements differ from each

other, and if so in what way.   The Registration Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Independence, throughout the sales process, if any, would fall away.

25.    It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

26.    On June 8, 2021, Contango and Independence issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **HOUSTON and FORT WORTH, Texas, June 8, 2021** (GLOBE NEWSWIRE) – Independence Energy, LLC ("Independence") and Contango Oil & Gas Company (NYSE American: MCF) ("Contango" or the "Company") today announced that they have entered into a definitive agreement to combine in an all-stock transaction. The combination, which was unanimously approved by both companies' Boards of Directors, will create a premier, diversified and low leverage U.S. independent oil and gas company focused on consolidation.
>
> Independence is a diversified, well-capitalized upstream oil and gas business built and managed by KKR's Energy Real Assets team with a scaled portfolio of low-decline, producing assets with meaningful reinvestment opportunities for low-risk growth across the Eagle Ford, Rockies, Permian and Mid-Continent. Since 2011, KKR's Energy Real Assets team has been executing on a consistent cash flow and risk-based strategy, complemented by deep industry expertise, responsible investment practices and the broader capabilities of KKR's global platform. KKR is a leading global investment firm investing in a diverse range of energy sources and committed to investing in a stable energy transition, one that supports the energy needs of today in a responsible manner while also contributing to a cleaner tomorrow.
>
> Contango is a Fort Worth, Texas based, independent oil and gas company whose business is to maximize production and cash flow from its portfolio of low-decline, producing assets primarily in the Mid-Continent, Permian, and Rockies areas. Contango has a proven track record of complementing that production and cash flow via acquisitions, having completed four significant acquisitions in the last 18 months.

Upon completion of the transaction, Independence shareholders will own approximately 76 percent and Contango shareholders will own approximately 24 percent of the combined company. Based on Contango's closing stock price of $5.62 on June 7, 2021, and pursuant to the terms of the proposed transaction, the combined company will have an initial equity market capitalization of approximately $4.8 billion and enterprise value of approximately $5.7 billion.

The combined business will be managed by KKR's Energy Real Assets team and led by David Rockecharlie, Head of KKR Energy Real Assets, who will serve as Chief Executive Officer. Contango's Chairman and largest shareholder, John Goff, will be Chairman of the Board of Directors of the combined company. Contango's senior leadership, including CEO Wilkie Colyer and President Farley Dakan, will continue managing Contango as an operating subsidiary of the combined company and focus on growth via acquisitions.

## Management Commentary

"This is a very compelling merger for Contango shareholders providing substantial value accretion, significant scale and lower cost of capital. KKR's desire to position the combined company to be their long-term primary platform to focus on continued consolidation in the industry is a testament to what the team has created at Contango. As the largest shareholder of Contango and Chairman of the new combined company, I look forward to working with David Rockecharlie and the KKR team in continuing our strategy of consolidation and industry leading performance," said Mr. Goff.

"We see tremendous opportunity ahead to create long-term value in the energy sector. With today's transaction, we are continuing to execute on the strategy we have been building over the last decade and look forward to working with John, Wilkie and the entire Contango team to deliver for our shareholders," said Mr. Rockecharlie.

"When John and I joined Contango nearly three years ago, we believed an upstream acquisition platform focused on alignment of incentives, low costs and an investor's mindset could generate superior shareholder returns. While we are proud of what we have accomplished to date, the opportunities to continue to scale profitably in this industry are enormous. In David's team at KKR and Independence, we have found like-minded individuals with a scaled and complementary asset base. This partnership helps to accelerate our inorganic growth strategy with a larger balance sheet and lower cost of capital for the benefit of all stakeholders. Just as I said three years ago, I'm excited about this opportunity and ready to get to work," said Mr. Colyer.

## Transaction Details

Under the terms of the transaction agreement, Independence will merge with an operating subsidiary ("OpCo") of a new parent company, which will become a publicly traded entity at closing, and Contango will become a wholly owned subsidiary of OpCo

The new company at closing will have an "Up-C" structure. Contango shareholders will receive Class A Common Stock representing voting and economic rights in the new parent company. Independence's owners will receive Class B Common stock representing voting rights in the new parent company and corresponding limited liability company units representing economic interests in OpCo.

## Headquarters and Governance

The combined company will be headquartered in Houston and expects to operate under a new name and under a new ticker symbol. The combined company intends to seek to be listed on the New York Stock Exchange as part of this transaction.

The Board of Directors of the combined company will be designated by KKR as the holder of the preferred stock discussed below. The initial board of directors at closing will consist of nine directors with two directors designated by Contango, including Mr. Goff as Chairman, and seven directors designated by KKR, including Mr. Rockecharlie.

As part of the transaction, KKR will receive a special class of non-economic preferred stock that provides KKR with the authority to appoint all members of the board of directors as well as certain consent rights over specified actions including incurrence of debt, changes in officers, mergers, acquisitions and divestitures. Upon completion of the merger, KKR's balance sheet will own approximately 17 percent of the combined company. KKR will forfeit the preferred stock if its retained common stock in the business drops below 50 percent of this initial ownership, subject to certain performance thresholds after the company's third annual shareholders meeting.

In addition, the combined company will enter into a management services agreement with a newly formed KKR subsidiary to become the manager of the combined company. The management services agreement will govern the external manager relationship between the public company and the manager as well as provide for the manager's fees and equity incentives consisting of annual grants of restricted shares that vest solely based on absolute and relative share price performance. The agreement will generally provide that upstream oil and gas opportunities sourced by KKR will be presented to the combined company, subject to certain enumerated exceptions.

## Timing and Approvals

The transaction is expected to close late in the third quarter or early in the fourth quarter of 2021, subject to the approval of Contango shareholders, certain regulatory approvals and satisfaction of other customary closing conditions.

A voting agreement has been signed by John Goff, Contango's largest current shareholder, pursuant to which he has agreed to vote in favor of the transaction, subject to certain specified exceptions.

*Potential Conflicts of Interest*

27.     The breakdown of the benefits of the deal indicate that Contango insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Contango.

28.     Most notably, the entire Proposed Transaction itself is designed to promote the interest of Independence at all costs, including at the expense of Plaintiff and other public stockholders of Contango.

29.     Moreover, certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, the Registration Statement fails to provide an accounting of these amounts.

30.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to receive certain consideration according to the merger agreement. Notably, certain of the Directors own such equity awards that will be exchanged for the merger consideration as follows:

| Name | Contango Restricted Stock Awards | Contango PSU Awards |
|------|---------------------------------|---------------------|
| B. A. Berligen | — | — |
| John C. Goff | — | — |
| Lon McCain | — | — |
| Janet Pasque | — | — |
| Joseph J. Romano | — | — |
| Karen Simon | — | — |
| Wilkie S. Colyer, Jr. | — | 4,716,315 |
| E. Joseph Grady | 9,424 | 1,410,000 |
| W. Farley Dakan | — | 3,825,000 |
| Chad B. Roller | — | 975,000 |

| Charles L. McLawhorn, III | — | 697,500 |
| --- | --- | --- |

31.     Further, certain employment agreements with certain Contango executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Contango common stockholders.  Notably these payments will be granted to Company insiders as follows:

**Golden Parachute Compensation**

| Name | Cash (1) | Equity (2) | Perquisites/ Benefits (3) | Total |
| --- | --- | --- | --- | --- |
| Wilkie S. Colyer, Jr. | $1,875,000 | $21,553,560 | $ 42,719 | $23,471,279 |
| E. Joseph Grady | $1,000,000 | $ 6,486,768 | $ 34,095 | $ 7,250,863 |
| W. Farley Dakan | $1,562,500 | $17,480,250 | $ 42,719 | $19,085,469 |

32.     Moreover, the Registration Statement is silent as to any post-close employment agreements Company insiders may have signed with Independence. The Registration Statement must adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

33.     Thus, while the Merger is not in the best interest of Contango stockholders, it will produce lucrative benefits for the Company's officers and directors, and especially for controlling stockholder Independence.

*The Materially Misleading and/or Incomplete Registration Statement*

34.     On July 26, 2021, and as amended on September 13, 2021, the Defendants caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation of the Exchange Act, failed to provide the Plaintiff in her capacity as a Company stockholder with material information necessary to make a decision regarding whether to vote her shares in favor of the Proposed Transaction and/or provides her with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading Up to the Proposed Transaction*

35.     Specifically, the Registration Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

    a.  Adequate reasoning as to why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than to have their shares diluted in value;

    b.  Specific reasoning as to why as to why no committee of independent directors was created to run the sales process;

    c.  The specific nature of all non-disclosure agreements entered into by the Company as part of the sales process, including with Independence, the specific terms of all standstill restrictions contained in each agreement, including all specific conditions, if any, under which such provisions would fall away, and

all specific differences between the entered into confidentiality agreements and the reasoning as to why they differed from one another; and

d. To adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning Contango's and Independence's Financial Projections*

36.    The Registration Statement fails to provide material information concerning financial projections provided and/or adjusted by Contango management and Independence Management and relied upon by Jefferies in its analyses.  The Registration Statement discloses management-prepared financial projections for which are insufficient and/or are materially misleading.

37.    Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Contango management and Independence Management provided to the Board, and Jefferies. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate

14

management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

38.     With respect to Contango Projections provided, the Registration Statement fails to disclose material line items for the following metrics:

      a.   EBITDAX (Unhedged), including all underlying metrics, inputs, and assumptions, including specifically: total revenues, total operating expenses, production taxes, and general and administrative costs;

      b.   EBITDAX (Hedged), including all underlying metrics, inputs, and assumptions, including specifically: total revenues, total operating expenses, production taxes, and general and administrative costs;

      c.   Operating Cash Flows, including all underlying metrics, inputs, and assumptions, including specifically: cash interest expenses and changes in working capital;

      d.   Free Cash Flow, including all underlying metrics, inputs, and assumptions, including specifically: capital expenditures, drilling and completions costs, plugging and abandonment costs, and acquisition capital expenditures.

39.     With respect to Contango Projections provided, the Registration Statement fails to disclose material line items for the following metrics:

      a.   EBITDAX (Unhedged), including all underlying metrics, inputs, and assumptions, including specifically: total revenues, total operating expenses, production taxes, and general and administrative costs;

    b.   EBITDAX (Hedged), including all underlying metrics, inputs, and assumptions, including specifically: total revenues, total operating expenses, production taxes, and general and administrative costs;

    c.   Operating Cash Flows, including all underlying metrics, inputs, and assumptions, including specifically: cash interest expenses and changes in working capital;

    d.   Free Cash Flow, including all underlying metrics, inputs, and assumptions, including specifically: capital expenditures, drilling and completions costs, plugging and abandonment costs, and acquisition capital expenditures.

40.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in both the Contango and Independence projections.

41.    This information is necessary to provide Plaintiff in her capacity as a Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff as not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the sales process and whether or not to vote in favor of the Proposed Transaction.

42.    Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, Independence's true worth, the accuracy of Jefferies' financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Jefferies*

43.     In the Registration Statement, Jefferies describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

44.     With respect to the *Net Asset Value Analysis – Contango*, the Registration Statement fails to disclose the following:

  a.   The projected asset-level cash flows utilized;

  b.   The specific inputs and assumptions used to determine the utilized discount rate range of 10.0% to 12.0%;

  c.   Contango's weighted average cost of capital;

  d.   Contango's general and administrative expenses;

  e.   Contango's hedge book value;

  f.   Contango's net debt; and

  g.   The specific commodity price assumptions using NYMEX pricing as of June 4, 2021 utilized.

45.     With respect to the *Net Asset Value Analysis – Independence*, the Registration Statement fails to disclose the following:

  a.   The projected asset-level cash flows utilized;

  b.   The specific inputs and assumptions used to determine the utilized discount rate range of 9.0% to 11.0%;

    c.   Independence's weighted average cost of capital;

    d.   Independence's general and administrative expenses;

    e.   Independence's hedge book value;

    f.   Independence's net debt; and

    g.   The specific commodity price assumptions using NYMEX pricing as of June 4, 2021 utilized.

46.    With respect to the *Discounted Cash Flow Analysis – Contango*, the Registration Statement fails to disclose the following

    a.   The present values of the unlevered free cash flows that Contango was expected to generate over the period from April 1, 2021 through December 31, 2025;

    b.   The terminal values of Contango calculated;

    c.   The specific inputs and assumptions used to determine the utilized range of multiples of enterprise value to NTM EBITDAX in the terminal period from 5.25x to 8.0x;

    d.   The specific inputs and assumptions used to determine the utilized discount rate range of 10.0% to 12.0%;

    e.   Contango's weighted average cost of capital; and

    f.   The specific commodity price assumptions using NYMEX pricing as of June 4, 2021 utilized.

47.     With respect to the *Discounted Cash Flow Analysis – Independence*, the Registration Statement fails to disclose the following

      a.   The present values of the unlevered free cash flows that Independence was expected to generate over the period from April 1, 2021 through December 31, 2025;

      b.   The terminal values of Independence calculated;

      c.   The specific inputs and assumptions used to determine the utilized range of multiples of enterprise value to NTM EBITDAX in the terminal period from 5.25x to 8.0x;

      d.   The specific inputs and assumptions used to determine the utilized discount rate range of 9.0% to 11.0%;

      e.   Independence's weighted average cost of capital; and

      f.   The specific commodity price assumptions using NYMEX pricing as of June 4, 2021 utilized.

48.     With respect to the *Comparable Public Company Analysis - Contango*, the Registration Statement fails to disclose the following:

      a.   The specific inputs and assumptions used to determine the utilized reference range for the following metrics:

          (i)        TEV / Proved Reserves (MMBoe);

          (ii)        TEV / Production (MBoe/d);

          (iii)      TEV / 2021E EBITDAX ($MM);

          (iv)      TEV / 2022E EBITDAX ($MM);

          (v)       Equity Value / 2021E OCF ($MM); and

(vi)     Equity Value / 2022E OCF ($MM).

49.     With respect to the *Comparable Public Company Analysis - Independence*, the Registration Statement fails to disclose the following:

    a.  The specific inputs and assumptions used to determine the utilized reference range for the following metrics:

        (i)      TEV / Proved Reserves (MMBoe);

        (ii)     TEV / Production (MBoe/d);

        (iii)    TEV / 2021E EBITDAX ($MM);

        (iv)     TEV / 2022E EBITDAX ($MM);

        (v)      Equity Value / 2021E OCF ($MM); and

        (vi)     Equity Value / 2022E OCF ($MM).

50.     With respect to the *Precedent Transactions Analysis*, the Registration Statement fails to disclose the following:

    a.  The value of each selected transaction;

    b.  The date on which each selected transaction closed;

    c.  The specific inputs and assumptions used to determine the utilized reference range for the following metrics:

        (i)      TTV / EBITDAX (FY+1) ($MM); and

        (ii)     TTV / EBITDAX (FY+2) ($MM).

51.     These disclosures are critical for Plaintiff in her capacity as a Company stockholder to be able to make an informed decision on whether to vote her shares in favor of the Proposed Transaction.

52.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves her interests.  Moreover, without the key financial information and related disclosures, Plaintiff in her capacity as a Company public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

53.     Plaintiff repeats all previous allegations as if set forth in full herein

54.     Defendants have disseminated the Registration Statement in favor of the Proposed Transaction.

55.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the

use of her name to solicit any proxy or consent or authorization in respect
of any security (other than an exempted security) registered pursuant to
section 78l of this title.

56.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any
proxy statement, form of proxy, notice of meeting or other communication,
written or oral, containing any statement which, at the time and in the light
of the circumstances under which it is made, is false or misleading with
respect to any material fact, or which omits to state any material fact
necessary in order to make the statements therein not false or misleading or
necessary to correct any statement in any earlier communication with
respect to the solicitation of a proxy for the same meeting or subject matter
which has become false or misleading.

57.     The Registration Statement was prepared in violation of Section 14(a) because it is
materially misleading in numerous respects and omits material facts, including those set forth
above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that
the Registration Statement is materially misleading and omits material facts that are necessary to
render them non-misleading.

58.     The Individual Defendants had actual knowledge or should have known of the
misrepresentations and omissions of material facts set forth herein.

59.     The Individual Defendants were at least negligent in filing a Registration Statement
that was materially misleading and/or omitted material facts necessary to make the Registration
Statement not misleading.

60.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and at present fail to provide complete information if such misrepresentations and omissions are not corrected.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Defendants)

61.     Plaintiff repeats all previous allegations as if set forth in full herein.

62.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Company stockholders.

63.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

64.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Contango's business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

65.     The Individual Defendants acted as controlling persons of Contango within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Contango to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Contango and all of its employees.  As alleged above, Contango is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in her favor, and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      Directing the Individual Defendants to comply with the Exchange Act and disseminate an Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D.      Granting such other and further equitable relief as this Court may deem just and proper.

Dated: September 21, 2021            **BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*